1  ROBERT C. SCHUBERT (No. 62684)
   (rschubert@sjk.law)
2  DUSTIN L. SCHUBERT (No. 254876)
   (dschubert@sjk.law)
3  AMBER L. SCHUBERT (No. 278696)
   (aschubert@sjk.law)
4  **SCHUBERT JONCKHEER & KOLBE LLP**
   2001 Union St Ste 200
5  San Francisco, California 94123
   Telephone: (415) 788-4220
6  Facsimile:  (415) 788-0161

7  *Counsel for Plaintiffs Placencia, Galan,*
   *Park, Hodges, Brown, Tullison, Hatchett,*
8  *Kekar, Grant, Arthur-Weaver, Payne, and*
   *the Putative Class*

9
# UNITED STATES DISTRICT COURT
10
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
### SOUTHERN DIVISION
12

| | |
|---|---|
| CLORINDA PLACENCIA, XAVIER GALAN, KIHAN PARK, AJA HODGES, KYYA BROWN, ERICA TULLISON, ONIKA HATCHETT, JOHN KEKAR, DEREK GRANT, LENA ARTHUR-WEAVER, AND REGINA PAYNE Individually and on behalf of all others situated, | Case No. 8:23-cv-139 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **CLASS ACTION** |
| KIA AMERICA, INC., AND HYUNDAI MOTOR AMERICA, | |
| Defendants. | |

CLASS ACTION COMPLAINT - 1

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiffs Clorinda Placencia ("Placencia"), Xavier Galan ("Galan"), Kihan Park ("Park"), Aja Hodges ("Hodges"), Kyya Brown ("Brown"), Erica Tullison ("Tullison"), Onika Hatchett ("Hatchett"), John Kekar ("Kekar"), Derek Grant ("Grant"), Lena Arthur-Weaver ("Arthur-Weaver"), and Regina Payne ("Payne") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, alleges as follows:

## I.    INTRODUCTION

1.    This is a class action brought on behalf of all persons nationwide who purchased or leased Kia vehicles made between 2011 and 2022 or Hyundai vehicles made between 2015 and 2022 equipped with traditional "insert-and-turn" steel key ignition systems ("Covered Vehicles") manufactured by Kia America, Inc. ("Kia") or Hyundai Motor America ("Hyundai") (collectively, "Defendants"). These Covered Vehicles are not equipped with "immobilizer" technology, which prevents them from starting without a code sent electronically to the Vehicle from the Vehicle's smart key (the "Defect").

2.    Defendants Kia and Hyundai are manufacturers and distributors of new motor vehicles. Defendants market and advertise the Covered Vehicles, oversee

Hyundai and Kia dealers, and develop the companies' nationwide marketing and informational materials.

3. As alleged herein, Defendants were aware or should have been aware of the Defect from multiple sources. Police reports indicate that the Defect has been used to steal Kia vehicles since 2011 and Hyundai vehicles since 2015. Defendants, however, neglected to disclose this to consumers and actively concealed the Defect. Not until November 1, 2021, did Defendant Hyundai make immobilizer technology in vehicles standard. Defendant Kia did not make this change until 2022. Despite the widespread increase in stolen Covered Vehicles, Defendants have not announced a recall of the Covered Vehicles. Defendants have stated they will provide steering locks to law enforcement in affected areas, and Defendant Hyundai will begin selling a security kit for affected owners or lessees in October 2022.

4. In recent months, viral videos on the platforms of YouTube and TikTok explain detailed instructions on how to steal the Covered Vehicles with the use of just a USB cord. A growing trend, titled the "Kia Challenge," encourages viewers to follow the instructions and steal a Covered Vehicle. The Challenge has inspired several videos of teens and young adults breaking into Covered Vehicles, stealing them, and engaging in unsafe driving practices, sometimes abandoning or even crashing the vehicles. Both car thieves and bystanders to the events have been injured or killed following the dangerous thefts and driving related to them.

CLASS ACTION COMPLAINT - 3

5.   In deciding to purchase her 2015 Kia Optima in March 2022, Plaintiff Placencia believed and relied on Defendants' deceptive representations of the fitness of the vehicle, and ultimately purchased the vehicle due to her lack of knowledge that the vehicle was lacking the anti-theft software. Plaintiff Placencia would not have purchased the Covered Vehicle had she known how easy it was to steal, or that the Vehicle was lacking a car immobilizer system.

6.   In deciding to purchase his 2020 Kia Sorento in September 2022, Plaintiff Galan believed and relied on Defendants' deceptive representations of the fitness of the vehicle. Plaintiff Galan would not have purchased the Covered Vehicle had he known how easy it was to steal, or that the Vehicle was lacking the immobilizer technology.

7.   In deciding to purchase his 2015 Hyundai Sonata in November 2014, Plaintiff Park believed and relied on Defendants' deceptive representations of the fitness of the Vehicle, and ultimately purchased the vehicle because of its promotional price. Plaintiff Park would not have purchased the Covered Vehicle had he known that the Vehicle did not come equipped with the immobilizer technology.

8.   In deciding to purchase her 2017 Kia Sportage, Plaintiff Hodges believed and relied on Defendants' deceptive representations of the fitness of the Vehicle. Plaintiff Hodges would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

CLASS ACTION COMPLAINT - 4

9. In deciding to purchase her 2020 Hyundai Kona in June 2020, Plaintiff Brown believed and relied on Defendants' deceptive representations of the fitness of the Vehicle. Plaintiff Brown would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

10. In deciding to purchase her 2018 Hyundai Tucson on June 26, 2022, Plaintiff Tullison believed and relied on Defendants' deceptive representations of the fitness of the vehicle. Plaintiff Tullison would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

11. In deciding to purchase her 2015 Hyundai Elantra, Plaintiff Hatchett believed and relied on Defendants' deceptive representations of the fitness of the vehicle, and ultimately purchased the vehicle because she believed it was a good, safe, and reliable car. Plaintiff Hatchett would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

12. In deciding to purchase his 2016 Hyundai Elantra in 2020, Plaintiff Kekar believed and relied on Defendants' deceptive representations of the fitness of the Vehicle, and ultimately purchased the Vehicle to replace his 2000 Hyundai. Plaintiff Kekar would not have purchased his Covered Vehicle had he known that the Vehicle was not equipped with the immobilizer technology.

13. In deciding to purchase his 2021 Kia Sportage on December 30, 2020, Plaintiff Grant believed and relied on Defendants' deceptive representations of the fitness of the Vehicle. Plaintiff grant would not have purchased his Covered Vehicle had he known that the Vehicle was not equipped with the immobilizer technology.

14. In deciding to purchase her 2018 Hyundai Santa Fe Sport, Plaintiff Arthur-Weaver believed and relied on Defendants' deceptive representations of the fitness of the vehicle. Plaintiff Arthur-Weaver would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

15. In deciding to purchase her 2020 Kia Sportage on March 31, 2022, Plaintiff Payne believed and relied on Defendants' deceptive representations of the fitness of the vehicle. Plaintiff Payne would not have purchased her Covered Vehicle had she known that the Vehicle was not equipped with the immobilizer technology.

16. Plaintiffs and the Class (as defined below) have suffered diminished market value of their Covered Vehicles, and even total loss of market value, as a direct result of Defendants' withholding material information and/or actively concealing the Defect. Plaintiffs brings this class action against Hyundai and Kia for violations of numerous consumer-protection and warranty laws, individually and on behalf of all persons nationwide who purchased or leased a Covered Vehicle.

## II.    PARTIES

### A. Plaintiffs

17.    Plaintiff Clorinda Placencia ("Placencia") is, and at all times relevant hereto has been, a citizen of the State of California. Placencia owns a 2015 Kia Optima which she purchased in March 2022 from Select Motorsports LLC, located at 357 Arrowhead Avenue, Unit 7, San Bernardino, California 92408. As alleged herein, Placencia's Kia Optima contains a Defect where the traditional "insert-and-turn" steel key ignition system is not equipped with immobilizer technology, which requires the vehicle's specific smart key to transmit a code to the vehicle before allowing the vehicle to start. As a result, Placencia's Kia Optima is highly susceptible to theft, as thieves need only remove a panel and start the car with any standard USB cord or similar shaped metal object. If Placencia had known about the Defect, she would not have purchased her Kia Optima or would have paid substantially less for it.

18.    Plaintiff Placencia's Vehicle was broken into in October 2022 when someone broke the window and attended to steal the car through the ignition. The thieves were unable to steal the car, however left it damaged and left Plaintiff Placencia with the cost of repairs.

19.    Plaintiff Placencia has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, her

CLASS ACTION COMPLAINT - 7

costs of repairing the damaged Vehicle, and overpayment and diminished value of the Vehicle.

20.    Plaintiff Xavier Galan ("Galan") is, and at all times relevant hereto has been, a citizen of the State of California. Plaintiff Galan purchased a 2021 Kia Sorento in September 2022 from Own A Car located at 5788 North Blackstone Avenue, Fresno, California 93710. As alleged herein, Galan's Kia Sorento contains a Defect where the traditional "insert-and-turn" steel key ignition system is not equipped with immobilizer technology, which requires the vehicle's specific smart key to transmit a code to the vehicle before allowing the vehicle to start. As a result, Galan's Kia Sorento is highly susceptible to theft, as thieves need only remove a panel and start the car with any standard USB cord or similar shaped metal object. If Galan had known about the Defect, he would not have purchased his Kia Sorento or would have paid substantially less for it.

21.    Plaintiff Galan has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, overpayment and diminished value of the Vehicle.

22.    Plaintiff Kihan Park ("Park") is a California citizen residing in Buena Park, California. Plaintiff Park purchased his 2015 Hyundai Sonata in November 2014 from King of Cars, located at 5911 East Olympic Boulevard, East Los Angeles, California 90022.

CLASS ACTION COMPLAINT - 8

23.   In the Summer of 2022, Plaintiff Park's 2015 Hyundai Sonata was stolen from the parking lot of his residential building complex. Plaintiff Park's Vehicle was recovered by the police two weeks later in another city. Plaintiff Park's Vehicle was found stripped for parts and in need of extensive repair.

24.   Plaintiff Park has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect, including but not limited to, the $6,000 in repair costs of repairing his damaged Class Vehicle, and overpayment and diminished value of the Vehicle.

25.   Plaintiff Aja Hodges ("Hodges") is an Illinois citizen residing in Bellwood, Illinois. Plaintiff Hodges purchased a 2017 Kia Sportage in July 2022, from Carmax, located at 101 North Wolf Road, Hillside, Illinois 60162.

26.   Plaintiff Hodges's Covered Vehicle was stolen on September 20, 2022. Plaintiff Hodges's Covered Vehicle was recovered by the police on September 22, 2022.  Plaintiff Hodges's Covered Vehicle is currently in the police impound lot while the police conduct an ongoing investigation. Plaintiff Hodges's Vehicle will need extensive repairs once it is released to her because the Vehicle's steering wheel column was ripped out during the theft.

27.   Plaintiff Hodges has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, her

insurance deductible, the cost of repair of her vehicle, the loss of use of her vehicle, and overpayment and diminished value of the Class Vehicle.

28. Plaintiff Kyya Brown ("Brown") is an Illinois citizen residing in Homewood, Illinois. Plaintiff Brown purchased a 2020 Hyundai Kona in June 2020 in Illinois.

29. Plaintiff Brown's Covered Vehicle was broken into on October 9, 2022. The thieves broke a window and removed the plastic cover of her ignition in an attempt to steal the car but were not able to do so.

30. Plaintiff Brown has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, the cost to repair the Class Vehicle, her insurance deductible, and overpayment and diminished value of the Vehicle.

31. Plaintiff Erica Tullison ("Tullison") is, and at all times relevant hereto has been, a citizen of the State of Louisiana. Plaintiff Tullison purchased a 2018 Hyundai Tucson on June 26, 2022 from Carvana. On October 2, 2022, Plaintiff Tullison's car was stolen. Police recovered Plaintiff Tullison's Vehicle on October 6, 2022. Plaintiff Tullison's Vehicle was found with the steering wheel entirely removed, as well as containing additional left items from the thieves such as a ski mask and blood. Plaintiff Tullison's Vehicle was used to commit other crimes and was informed by her insurance company that the Vehicle is now a total loss.

32.  Plaintiff Tullison has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, her total loss of the Vehicle, the cost of needing a new vehicle, and overpayment and diminished value of the Vehicle.

33.  Plaintiff Onika Hatchett ("Hatchett") is, and at all times relevant hereto, has been, a citizen of the State of Delaware. Plaintiff Hatchett purchased a 2015 Hyundai Elantra on March 28, 2017 from Ourisman Mazda of Laurel, located at 3516 Fort Meade Road, Laurel, Maryland.

34.  Plaintiff Hatchett has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, overpayment and diminished value of the Vehicle.

35.  Plaintiff John Kekar ("Kekar") is, and at all times relevant hereto has been, a citizen of the State of Indiana. Plaintiff Kekar purchased a 2016 Hyundai Elantra in 2020 from Tom Wood Ford, located at 3130 East 96th Street, Indianapolis, Indiana 46240. Plaintiff Kekar was notified by the news that his Vehicle lacks the immobilizer technology. He would not have purchased the Vehicle had he known.

36.  Plaintiff Kekar has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated the Defect including, but not limited to, overpayment and diminished value of the Vehicle.

CLASS ACTION COMPLAINT - 11

37. Plaintiff Derek Grant ("Grant") is, and at all times relevant hereto has been, a citizen of the State of Ohio. Plaintiff Grant purchased a 2021 Kia Sportage on December 30, 2020 from Kia of Bedford located at 8180 Rockside Road, Bedford, Ohio 44146. Plaintiff Grant's Vehicle was stolen on October 10, 2022. His vehicle was recovered by police the same day in a different part of town, and his employee badge and personal effects were found in a hospital parking lot of which he does not work.

38. Plaintiff Grant's insurance is currently covering the cost of a rental car for him, but only for a period of thirty days. Plaintiff Grant's Vehicle is still being repaired and has been delayed due to backordered parts because of the high rates of thefts of the Vehicles.

39. Plaintiff Grant has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, the cost of repair for the damages to the Vehicle, the cost of a rental car after the insurance coverage expires, and overpayment and diminished value of the Vehicle.

40. Plaintiff Lena Arthur-Weaver ("Arthur-Weaver") is, and at all times relevant hereto has been, a citizen of the State of Ohio. Plaintiff Arthur-Weaver purchased a 2018 Hyundai Santa Fe Sport from Hyundai of Bedford, located at 18300 Rockside Road, Bedford, Ohio 44146. Plaintiff Arthur-Weaver's Vehicle was broken into and attempted to be stolen on October 20, 2022. Plaintiff Arthur-Weaver's Vehicle was

only not stolen because her fiancé encountered the thieves during the break-in. Before the thieves left, they broke the back window and ripped out Plaintiff Arthur-Weaver's steering column. Plaintiff Arthur-Weaver's Vehicle is still undergoing repairs and awaiting a damages assessment from her insurance.

41. Plaintiff Arthur-Weaver has suffered an ascertainable loss as a result of Defendant Hyundai's wrongful conduct associated with the Defect including, but not limited to, the cost of repair for the damages to her Vehicle, the cost of her insurance deductible, and the costs of a rental car needed to secure transportation, as well as overpayment and diminished value of the Vehicle.

42. Plaintiff Regina Payne ("Payne") is, and at all times relevant hereto has been, a citizen of the State of New York. Plaintiff Payne purchased a 2020 Kia Sportage on March 31, 2022 from Transit Town Kia, located at 3160 Transit Road, West Seneca, New York 14224. Plaintiff Payne's Vehicle was stolen in August of 2022 and was in the repair shop for a month to fix the damages. Plaintiff Payne sold her Vehicle immediately after the repairs were completed because she was too afraid to leave it in her driveway and risk another theft.

43. Plaintiff Payne has suffered an ascertainable loss as a result of Defendant Kia's wrongful conduct associated with the Defect including, but not limited to, her cost of repairs, her loss of value when she sold the Vehicle, and overpayment and diminished value of the Vehicle.

**B. Defendants**

44.   Defendant Kia America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

45.   Defendant Hyundai Motor America is a California corporation with a principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.

### III.   JURISDICTION AND VENUE

46.   This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a state other than that of Defendants, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

47.   This Court also has supplemental jurisdiction over the state law claims pursuant to U.S.C. § 1367.

48.   This Court has personal jurisdiction over Defendants because Defendants are California corporations, both with principal places of business in California. Defendants maintain headquarters in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

CLASS ACTION COMPLAINT - 14

49.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction.

50.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are citizens of California with principal places of business located in this district.

## IV.    FACTUAL ALLEGATIONS

51.    Immobilizer technology has been proven to substantially reduce vehicle theft. Vehicle theft plunged after immobilizers were introduced in the 1990s, with a 2016 study finding that the technology reduced auto theft by 40% over a ten-year period.[1]

52.    Outside of the United States, many countries require immobilizer technology as standard for all new vehicles. The European Union has required the technology in all new vehicles since 1998, Australia has required it since 2001, and Canada has required it since 2007.[2]

53.    Defendants Kia and Hyundai have refused to include immobilizer technology as standard in their vehicles in the United States, even though they sell almost identical vehicles with the technology in foreign countries that require it.

---

[1] Jan C. van Ours & Ben Vollaard, *The Engine Immobilizer: A Non-Starter For Car Thieves*, The Economic Journal, Vol. 126, No. 593, 1264, 1283 (June 2016), https://fortune.com/2022/09/22/hyundai-kia-cars-stealing-hack-thieves/.
[2] *Id*. at 1265.

CLASS ACTION COMPLAINT - 15

54. Defendants most likely have not instituted the anti-theft technology as standard in the Covered Vehicles as a method to increase their profits by saving the costs of implementing immobilizers.

55. Because the Covered Vehicles are so easy to steal, and viral videos have made instructions on how to do so widely accessible, rates at which Covered Vehicles are stolen have increased immensely.

56. St. Petersburg, Florida, reported that over one third of car thefts in the city since the launch of the viral videos were Covered Vehicles.[3] Los Angeles, California, reported an 85% increase in thefts of Covered Vehicles in the last year.[4]

57. Purchasers and lessees are suffering substantial costs to repair Covered Vehicles after they are recovered. The repair costs of a window and steering column on a Class Vehicle can be upwards of $3,000.[5] Covered Vehicles are not always recovered after the theft or can be damaged to the amount of total loss, leaving owners with costs of $10,000 or more.[6]

---

[3] Delella, Chris & Day, Andrea, *TikTok Challenge Spurs Rise in Thefts of Kia, Hyundai Cars*, CNBC, https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html.
[4] *Id.*
[5] Causey, James E., *Motor Vehicle Thefts in Milwaukee Are Up 152%, Auto Repair Businesses Say the Worst May Be Yet To Come*, Milwaukee Journal Sentinel, https://www.jsonline.com/story/news/solutions/2021/02/03/motorvehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed Sept. 26, 2022).
[6] *Id.*

CLASS ACTION COMPLAINT - 16

58. Hyundai and Kia repair shops are suffering back orders and shortages of supplies needed to repair the Covered Vehicles in such high rates.[7]

59. Federal regulations have long held "stolen cars constitute a major hazard to life and limb on the highways."[8] Additionally, "cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals."[9]

60. Due to the high rate of theft of Defendants' Covered Vehicles, insurance companies are raising rates to insure the Covered Vehicles, or even refusing to insure them all together. Progressive recently released the following statement to ABC 7 News Denver:

> We're committed to providing affordable insurance solutions for consumers based on the particular level of risk while also ensuring our policies are accurately priced. Due to the theft risk that some Hyundai and Kia vehicles present, in many cases it makes these vehicles difficult to insure, so we have adjusted our acceptance criteria for new business on some of these models. We'll continue to monitor how this issue plays out, and are hopeful to be able to revisit our decision if the theft risk diminishes and community awareness improves.

61. Owners and lessees of Covered Vehicles have suffered additional harms to the cost of repairs, such as increased insurance rates, theft of other property taken

---

[7] *Id.*
[8] 33 Fed. Red. 6, 471, (Apr. 27, 1968).
[9] *Id.*

CLASS ACTION COMPLAINT - 17

from the Covered Vehicles, and the diminution in value of the Covered Vehicles being targeted.

62. Covered Vehicles also fail to comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle or both."

63. Proper compliance with FMVSS 114 would reduce the theft rate because when the key is removed from the starting system, it would not be able to be activated and stolen with a USB cord.

64. Defendants Kia announced that all models made in 2022 or later would have the immobilizer technology as standard, and Defendant Hyundai made the same announcement for models made starting November 2021.[10] This, however, offers no relief to the thousands of consumers whose Covered Vehicles remain vulnerable to easy theft.

65. Defendants have known about the vulnerability of their vehicles to theft due to the lack of immobilizer technology. In fact, they provide it as standard in the

[10] Krisher, Tom, *Thieves Key on Hack that Leaves Hyundai, Kia Cars Vulnerable*, The Washington Post, https://www.washingtonpost.com/business/thieves-key-on-hack-that-leaves-hyundai-kia-cars-vulnerable/2022/09/22/454cca90-3a2b-11ed-b8af-0a04e5dc3db6_story.html.

CLASS ACTION COMPLAINT - 18

majority of their higher-end vehicles. However, Defendants refused to follow competitor standards and implement it as standard in their lower-cost vehicles.

66.   Upon information and belief, based on numerous customer complaints relayed through authorized dealers, Defendants have known about the ease of theft of the Covered Vehicles for many years.

67.   Defendants have known Covered Vehicles were being commonly stolen because Defendants supply replacement parts to dealerships and shops and would have received high numbers of orders for such parts.

68.   Defendants continue to sell and lease Covered Vehicles, placing more cars that lead to dangerous thefts in the market. Only recently with the publication of reports regarding the viral video challenges have Defendants decided to implement the immobilizer technology as standard in their vehicles.

69.   To date, the Class members who have previously purchased the Covered Vehicles remain susceptible to theft and damages to their vehicles.

## V.   CHOICE OF LAW ALLEGATIONS

70.   Because this Complaint is filed in California, California's choice of law doctrine governs the state law allegations in this Complaint. Under California's choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

CLASS ACTION COMPLAINT - 19

71. Defendants Kia and Hyundai are headquartered, and engaged in all actions relevant to these Claims, in California, and California therefore has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state. Application of California law to Defendants and the claims of all Class members would not be arbitrary or unfair.

72. Plaintiffs plead claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims. Alternatively, Plaintiffs plead state law claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI. CLASS ACTION ALLEGATIONS

73. Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

74. Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

All persons and entities nationwide that purchased or leased a Class Vehicle (the "Nationwide Class").

All persons and entities that purchased or leased a Class Vehicle in the State of California (the "California Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Illinois ("the Illinois Class").

CLASS ACTION COMPLAINT - 20

All persons and entities that purchased or leased a Class Vehicle in the State of Indiana (the "Indiana Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Ohio (the "Ohio Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Louisiana (the "Louisiana Class").

All persons and entities that purchased or leased a Class Vehicle in the State of Maryland (the "Maryland Class").

All persons and entities that purchased or leased a Class Vehicle in the State of New York (the "New York Class").

(Collectively, the "Class" unless otherwise noted.)

75. Excluded from the Class are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors: (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

76. Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members. Plaintiffs disclaim any intent or right to seek recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

77. Although the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the

Class is ascertainable based upon the records maintained by Defendants and governmental officials. Upon information and belief, Defendants have sold and leased many thousands of Covered Vehicles nationwide during the relevant time period. Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

78.   Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a) Whether Defendants designed, advertised, sold, and placed the Covered Vehicles into the stream of commerce;

(b) Whether the Covered Vehicles were sold with the Defect described above;

(c) Whether the Defect in the Covered Vehicles is a safety and/or security defect that created a foreseeable risk of harm to Plaintiffs and the class;

(d) Whether Defendants breached implied warranties made to the Class members;

(e) Whether Defendants knew about the Defect and, if so, how long Defendants have known about the Defect;

(f) Whether Defendants concealed the Defect;

(g) Whether Defendants' conduct violated consumer protection statutes, warranty laws, and other laws asserted herein;

CLASS ACTION COMPLAINT - 22

(h) Whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution in value and deprivation of the benefit of the bargain; and

(i) Whether the Class members are entitled to injunctive relief.

79. Plaintiff's claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a Vehicle with the same Defect.

80. Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members. Additionally, Plaintiffs have retained counsel competent and experienced in complex class action litigation including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class members will be fairly and adequately protected.

81. A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and effectively adjudicating the controversy. In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions

against large corporations such as Defendants Hyundai and Kia. It is beneficial to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class members. The Defect is common to all Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

82. A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendants have acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII. CLAIMS

**A. Claims Brought on Behalf of the Nationwide Class**

### CLAIM I
### BREACH OF IMPLIED WARRANTY
### (BASED ON CALIFORNIA LAW)

83.    Plaintiffs Placencia, Galan, Park, Hodges, Brown, Tullison, Hatchett, Kekar, Grant, and Payne, re-allege and incorporate each and every allegation set forth above as if fully written herein.

84.    This claim is brought under California law on behalf of a Nationwide Class.

85.    As detailed herein, Defendants designed, manufactured, distributed, and sold the Covered Vehicles knowing that consumers like Plaintiffs and the Class would purchase these products from Defendants' authorized dealers as a means of transportation.

86.    As merchants of the Covered Vehicles, Defendants warranted to Plaintiffs and the Class that the Covered Vehicles were fit for the ordinary purpose for which they are used.

87.    Plaintiffs Placencia, Galan, Park, Hodges, Brown, Tullison, Hatchett, Kekar, Grant, and Payne, relied on this warranty to their detriment.

88.    The Covered Vehicles are not "merchantable" because they are not reasonably fit for the ordinary purpose for which they are sold, which is to provide safe, reliable transportation. To the contrary, the Covered Vehicles pose a substantial safety hazard because the Defect renders them vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

89.    Sufficient privity of contract exists to assert this implied warranty claim.

90.    Defendants market and advertise the sale of the Covered Vehicles in various media outlets across the United States, including to Plaintiffs and the Class.

91.    Defendants advertise their authorized dealer network on their respective websites and task them with administering the promotional material and warranty information for new Covered Vehicles to prospective consumers throughout the nation. Through Defendants' websites, consumers obtain information about vehicles; design specific vehicles to meet his or her needs; obtain information about the value of trade-in vehicles; request additional marketing materials; and request quotes for vehicle. Defendants then send these consumers to "authorized dealers" to consummate sales and leases.

92.    Defendants control various details regarding their dealer's operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Covered Vehicles.

93. Plaintiffs purchased and/or leased their respective Covered Vehicles from "authorized dealers" with the misunderstanding that these dealers were acting on behalf of Defendants.

94. The sole and express purpose that each authorized Kia and Hyundai dealer has when it acquires the vehicles from Kia and Hyundai is to immediately re-sell them to the end-users like Plaintiffs and the Class members.

95. Defendants' conduct, and the conduct of their respective dealers, thus create a justifiable belief on the part of Plaintiffs and Class members that the dealers are agents of Kia and/or Hyundai, which the Plaintiffs relied on to their detriment.

96. Therefore, each Kia and Hyundai dealership operates as the actual and/or apparent agent of the Defendants-manufacturers named herein, which satisfied any privity requirement.

97. Further, the purchase and/or lease agreements between the Plaintiffs and their respective dealers were entered directly and primarily for Kia and Hyundai's benefit.

98. Similarly, any contract whereby Defendants' authorized dealers acquire the Covered Vehicles from Defendants to resell to the end-user is also for the express benefit of Plaintiffs and the Class. On information and belief, Defendants' authorized dealers make little money on the actual sale or lease of new vehicles, including the Covered Vehicles.

99.  Plaintiffs and the members of the Class therefore have standing to assert implied warranty claims against Defendants by virtue of their status as intended, third-party beneficiaries of these dealership sales agreements, which further satisfies the privity requirement.

100. Privity therefore exists between Defendants on the one hand, and the Plaintiffs and the Class on the other by virtue of the express warranties provided through their purchase and/or lease agreements.

101. Moreover, the Magnuson-Moss Warranty Act ("MMWA") provides that when a manufacturer offers a written warranty, it may limit the duration of an implied warranty to the duration of an express warranty, but it cannot disclaim implied warranties all together.[11] "No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product. . . ."[12] A manufacturer should not be permitted to avoid this rule by claiming a lack of privity when the manufacturer itself chose its distribution model.

102. Imposing a rigid privity requirement in this case would permit Defendants to escape both the letter and spirit of the MMWA through their preferred distribution scheme; one in which the only parties in strict privity that can assert an implied

---

[11] *See* 15 U.S.C. § 2308(a).
[12] *Id.*

CLASS ACTION COMPLAINT - 28

warranty claim are Hyundai and Kia's own dealers who would never need to assert the claim in the first instance.

103. Consequently, any rigid application of a state law privity requirement would violate the Supremacy Clause and be preempted.[13] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[14]

104. As a direct and proximate result of Defendants' breach of these implied warranties, Plaintiffs and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial. These damages include, but are not limited to, overpayment for the Covered Vehicles, insurance deductibles to get the stolen Covered Vehicles repaired, the cost to replace other property stolen in connection with the thefts of Vehicles, the loss of use of the Vehicles, costs associated with the replacement of the totaled Covered Vehicles, and/or the diminution in value of the stolen Covered Vehicles that were totaled.

105. The circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose, such that the Plaintiffs and the Class may seek alternative remedies. Indeed, these warranties have denied the Plaintiffs and the

---

[13] See U.S. Const. art. VI.
[14] *Id.*

CLASS ACTION COMPLAINT - 29

Class the benefit of their respective bargains, which presupposes they were (or are) able to use the Covered Vehicles in a meaningful manner without the ever-present risk of them being stolen.

106. Further, Kia and Hyundai's exclusion and/or limitation of consequential damages in their New Vehicle Limited Warranties is unconscionable and void for the reasons stated herein.

107. Therefore, Plaintiffs and the Class are entitled to damages flowing from Defendants' breach of their implied warranties, as well as all consequential and incidental damages resulting from this breach.

108. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

**CLAIM II**
**VIOLATIONS OF MAGNUSON MOSS WARRANTY ACT,**
**15 U.S.C. § 2301**

109. Plaintiffs Placencia, Galan, Park, Hodges, Brown, Tullison, Hatchett, Kekar, Grant, and Payne, repeat and reallege the preceding paragraphs as if fully set forth herein.

110. Plaintiffs bring this claim on behalf of the Nationwide Class.

CLASS ACTION COMPLAINT - 30

111. Congress enacted the MMWA, 15 U.S.C. §§ 2301 *et seq*., to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty.[15]

112. The Covered Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(d)(1).

113. Plaintiffs and members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

114. Kia and Hyundai are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

115. In connection with the sale and/or lease of the Covered Vehicles, Defendants supplied Plaintiffs and the Class with "written warranties" as that term is defined in 15 U.S.C. § 2301(6).

116. 15 U.S.C. § 2301(d)(1) provides that "a consumer who is damages by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service

_____

[15] *Id*. § 2301(d)(1).

CLASS ACTION COMPLAINT - 31

1 contract, may bring suit for damages and other legal and equitable relief in any court

2 of competent jurisdiction in any state."

3     117.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who

4 is damaged by the failure of a warrantor to comply with an implied warranty.

5     118.    Defendants provided Plaintiffs and Class members with an implied

6 warranty of merchantability in connection with the purchase or lease or their vehicles

7 that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty

8 Act, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability,

9 Defendants warranted that the Covered Vehicles were fit for their ordinary purpose

10 and would pass without objection in the trade as designed, manufactured, and

11 marketed, and were adequately contained, packaged, and labeled.

12     119.    Defendants breached its implied warranties, as described herein, and is

13 therefore liable to Plaintiffs and the Class under 15 U.S.C. § 2301(d)(1). The Defect

14 rendered the Covered Vehicles unmerchantable and unfit for their ordinary use of

15 driving when they were sold or leased, and at all times thereafter.

16     120.    Plaintiffs used their respective Covered Vehicles in a manner consistent

17 with their intended use and performed every duty required of them under the terms

18 of the warranty, except as may have been excused or prevented by Defendants'

19 conduct of by operation of law.

20

121.     Plaintiffs and the Class seek to recover damages resulting directly from Defendants' breach of their implied warranties and their deceitful and unlawful conduct described herein. These damages include, but are not limited to, overpayment for the Covered Vehicles, insurance deductibles to get the stolen Covered Vehicles, the loss of use their respective Covered Vehicles, and/or the diminution in value of a stolen Covered Vehicles that were not totaled.

122.     The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2301(d)(1). Plaintiffs seek reformation of Defendant Kia and Hyundai's respective written warranties to comport with their obligations under the MMWA and with consumers' reasonable expectations. Plaintiffs also seek to enjoin Defendants from acting unlawfully as alleged herein.

123.     Lastly, Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case. The MMWA provides for an award of costs and expenses including attorneys' fees, to prevailing consumers in the Court's discretion.[16]

**CLAIM III**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

---

[16] 15 U.S.C. § 2301(d)(2).

124.    Plaintiffs Placencia, Galan, Park, Hodges, Brown, Tullison, Hatchett, Kekar, Grant, and Payne incorporate by reference all preceding allegations as though fully set forth herein.

125.    Plaintiffs bring this claim on behalf of the Nationwide Class.

126.    Defendants intentionally concealed the Defect.

127.    Defendants further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each Covered Vehicle and on its website, that the Covered Vehicles that were sold contained no significant defects, that they were reliable, and that they would perform and operate properly.

128.    Defendants knew about the Defect when these representations were made.

129.    The Covered Vehicles purchased by Plaintiffs and the other Class members contained the Defect.

130.    Defendants had a duty to disclose the Defect as previously mentioned, because the Defect created a safety hazard and Plaintiffs and other Class members relied on Defendants' material misrepresentations.

131.    As alleged herein, at all relevant times, Defendants have claimed and advertised the Covered Vehicles as free from defects. Defendants claimed and continue to claim the many benefits and advantages of the Covered Vehicles, placing

blame on the unlawful conduct of thieves instead of the manufacturers. Defendants have nonetheless failed to disclose important facts related to the Defect. This made Defendants' other disclosures about the Covered Vehicles deceptive.

132. The truth about the Defect was known only to Defendants. Plaintiffs and other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class members.

133. Plaintiffs and other Class members reasonably relied upon Defendants' deceptive misrepresentations. Plaintiffs could not have known that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not have discovered Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class members by concealing the true facts about the Covered Vehicles and their Defect.

134. Defendants' false representations and omissions were material to consumers because they concerned qualities of the Covered Vehicles that played a significant role in the value of the Covered Vehicles.

135. Defendants had a duty to disclose the Defect and violations with respect to the Covered Vehicles because details of the true facts were known and accessible only to Defendants, because Defendants had exclusive knowledge as to these facts, and because Defendants knew these facts were not known or reasonably discoverable by Plaintiffs or Class members.

136.     Defendants also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Covered Vehicles and failed to disclose to consumers that the Covered Vehicles contained the Defect that would affect the safety, quality, and performance of the Class Vehicle.

137.     Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect as described above. These omitted and concealed facts were material because they directly impact the value of the Covered Vehicles purchased by Plaintiffs and Class members.

138.     Defendants still have not made full and adequate disclosures and continue to defraud Plaintiffs and Class members by concealing material information regarding the Defect.

139.     Plaintiffs and Class members were unaware of the omitted material facts referenced in this Complaint, and they would not have acted as they did if they had known of the concealed or suppressed facts of the Defect, in that they would not have purchased or paid as much for the cars without immobilizer technology, or would have taken affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Defendants were in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

140. Because of the concealment and suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Covered Vehicles that are diminished in value as a result of Defendant's concealment or the true quality of the Covered Vehicles' security systems. Had Plaintiffs and Class members been aware of the Defect in the Covered Vehicles, and Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

141. The value of Plaintiffs' and Class members' Covered Vehicles have diminished as a result of Defendants' fraudulent concealment of the Defect, which had made any reasonable consumer reluctant to purchase a Class Vehicle, let alone pay what previously would have been fair market value for the Covered Vehicles.

142. Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

143. Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct therefore warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (CAL. COM. CODE § 2314)

144.     Plaintiffs Placencia, Galan, Park, Hodges, Brown, Tullison, Hatchett, Kekar, Grant, and Payne incorporate by reference all preceding allegations as though fully set forth herein.

145.     Plaintiffs bring this claim on behalf of the Nationwide Class.

146.     Defendants are and were at all relevant times merchants with respect to motor vehicles under Cal. Com. Code § 2314.

147.     A warranty that the Covered Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

148.     Defendants marketed the Covered Vehicles as safe and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Covered Vehicles.

149.     Plaintiffs and other Class members purchased or leased the Vehicles from Defendants, through Defendants' authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Covered Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and sellers of the Covered Vehicles.

CLASS ACTION COMPLAINT - 38

150.     Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

151.     Because of the Defect, the Covered Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

152.     Defendants knew about the Defect, allowing Defendants to cure their breach of warranty if they chose to do so.

153.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the defect at the time of the sale of the Covered Vehicles.

154.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations

as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure their breach of written warranties would therefore be unnecessary and futile.

155.     Therefore, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**B. Claims Brought On Behalf of the California Class**

**CLAIM V**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

156.     Plaintiffs Placencia, Galan, and Park, individually and on behalf of the California Class, incorporate by reference all of the allegations contained in the preceding Complaint as if fully set forth herein.

157.     Plaintiffs Placencia, Galan, and Park bring this claim individually and on behalf of the California Class against Defendants Kia and Hyundai.

158.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

159.     Defendants' actions as alleged herein constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Defendants violated California's strong consumer protection and false advertising

CLASS ACTION COMPLAINT - 40

laws, including California's False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq*.) and the CLRA (Civ. Code §§ 1750, *et seq*.).

160.    Defendants' actions as alleged in this complaint constitute "unfair" conduct within the definition, meaning, and construction of California Business and Professions Code Sections 17200 *et seq*. Defendants' business practices, as alleged herein, are "unfair" because they utilize immoral, deceptive, and fraudulent marketing and manufacturing practices that cause substantial injuries to consumers.

161.    Defendants' conduct violated the UCL as "unfair" in at least the following ways:

i.      By failing to disclose the Defect;

ii.     By selling and leasing Vehicles that suffer from the Defect;

iii.    By knowingly and intentionally concealing from Plaintiffs Placencia, Galan, and Park and the Class members the Defect;

iv.     By marketing the Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the Defect; and

v.      By violating other California laws, including California consumer protection laws.

162.    Defendants' actions as alleged herein constitute a "fraudulent" practice because, by making the false and misleading representations about the Covered Vehicles' security systems, while manufacturing equal cars in other countries with

CLASS ACTION COMPLAINT - 41

the immobilizer technology, Defendants' conduct was likely to deceive, and did deceive, reasonable consumers. Defendants' failure to adequately disclose that the Defect existed in the Covered Vehicles also constitutes a material omission in violation of the UCL.

163. Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with intent to mislead Plaintiffs Placencia, Galan, and Park and the Class members.

164. In purchasing or leasing the Vehicles, Plaintiffs Placencia, Galan, Park, and the Class members were deceived by Defendants' failure to disclose to Defect.

165. Plaintiffs Placencia, Galan, Park, and the Class members reasonably relied upon Defendants' false misrepresentations and omissions. They had no way of knowing that Defendants' representations were false, misleading, and incomplete. As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of a known defect. Plaintiffs Placencia, Galan, Park and the other Class members did not, and could not, unravel Defendants' deception on their own.

166. Defendants knew or should have known that its conduct violated the UCL.

167. Defendants owed Plaintiffs Placencia, Galan, and Park and the Class members a duty to disclose the truth about the Defect because the Defect created a safety hazard and Defendants:

CLASS ACTION COMPLAINT - 42

i.      Possessed exclusive knowledge of the Defect;

ii.     Intentionally concealed the foregoing from Plaintiffs Placencia, Galan, and Park and the Class members; and/or

iii.    Made incomplete representations by failing to warn the public or to publicly admit the Defect.

168.    Defendants had a duty to disclose the Defect, because Plaintiffs Placencia, Galan, and Park and the Class members relied on Defendants' material misrepresentations and omissions.

169.    Defendants' conduct proximately caused injuries to Plaintiffs Placencia, Galan, Park, and the Class members that purchased or leased the Covered Vehicles and suffered harm as alleged herein.

170.    Plaintiffs Placencia, Galan, Park, and the Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs Placencia, Galan, and Park and the Class members incurred costs, including overpayment for their Vehicles and diminution in value of their Vehicles.

171.    Defendants' violations cause continuing injuries to Plaintiffs Placencia, Galan, and Park and the Class members.

172.    Defendants' unlawful acts and practices complained of herein affect the public interest.

CLASS ACTION COMPLAINT - 43

173.     Defendants' misrepresentations and omissions alleged herein caused Plaintiffs Placencia, Galan, and Park and other Class members to make their purchased of their Covered Vehicles. Absent those misrepresentations and omissions, Plaintiffs Placencia, Galan, Park, and the Class members, would not have purchased these Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain the Defect and did not fail to live up to industry standards.

174.     Accordingly, Plaintiffs Placencia, Galan, Park and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

175.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs Placencia, Galan, and Park and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for any such other relief as may be appropriate.

**CLAIM VI**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750, *et seq*.**

176. Plaintiffs Placencia, Galan, and Park, individually and on behalf of the California Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

177. Plaintiffs Placencia, Galan, and Park bring this claim individually and on behalf of the California Class against Defendants.

178. The Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, is a California statute enacted to protect consumers involved in a transaction against unfair and deceptive business practices.

179. Defendants are "persons" under Cal. Civ. Code § 1751(c).

180. Plaintiffs Placencia, Galan, and Park, and the California Class are "consumers" under Cal. Civ. Code § 1761(d).

181. In violation of the CLRA, Defendants engaged in unfair and deceptive business practices by (a) advertising that the Covered Vehicles were able to be locked and secured, and (b) representing that the Covered Vehicles are safe and reliable modes of transportation not subject to theft, qualities they do not have.

182. Defendants intentionally provided Plaintiffs Placencia, Galan, and Park, and the California Class with products and materials containing the misrepresentations.

183. Plaintiffs Placencia, Galan, Park, and the California Class relied on Defendants' security misrepresentations in purchasing or leasing the Covered Vehicles.

184. As a result of Defendants' conduct, Plaintiffs Placencia, Galan, Park, and the California Class received inferior products from what they were promised.

185. Plaintiffs Placencia, Galan, Park, individually and on behalf of the California Class, demand judgment against Defendants under the CLRA for injunctive relief.

186. Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs Placencia, Galan, Park, and the California Class will serve Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for its violations of the CLRA, Plaintiffs Placencia, Galan, and Park reserve their right to amend this Class Action Complaint to seek monetary damages under the CLRA.

187. Notwithstanding any other statements in this Class Action Complaint, Plaintiffs Placencia, Galan, and Park do not seek monetary damages in connection with their CLRA claims, and will not do so, until the applicable thirty-day period has passed.

**CLAIM VII**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§ 17500 *et seq*.**

CLASS ACTION COMPLAINT - 46

188.    Plaintiffs Placencia, Galan, and Park, individually and on behalf of the California Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

189.    Defendants engaged in the advertising and marketing alleged herein with the intent to directly or indirectly influence the sale or lease of the Covered Vehicles to consumers, including Plaintiffs Placencia, Galan, Park, and the California Class.

190.    Defendants knew or should have known that the hidden Defect and the misrepresentations advertised regarding the Covered Vehicle's security systems were likely to deceive a reasonable consumer purchasing or leasing the Covered Vehicles.

191.    Defendants' claims regarding the security systems of the Covered Vehicles are false, misleading, and deceptive in violation of the California False Advertising Law.

192.    Defendants' deceitful business practices constitute false advertising conduct, allowing Plaintiffs Placencia, Galan, Park, and the California Class to seek equitable relief under the California False Advertising Law.

**C. Claims Brought on Behalf of Illinois Class**

**CLAIM VIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

CLASS ACTION COMPLAINT - 47

**(815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A)**

193.    Plaintiffs Hodges and Brown, individually and on behalf of the Illinois Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

194.    Plaintiffs Hodges and Brown bring this claim individually and on behalf of the Illinois Class against Defendants Kia and Hyundai.

195.    Defendant Kia is a "person" as that term is defined in 815 ILCS 505/1(c).

196.    Defendant Hyundai is a "person" as that term is defined in 815 ILCS 505/1(c).

197.    Plaintiffs Hodges and Brown and the Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

198.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damages thereby." 815 ILCS 505/2.

199.    In the course of its business, Defendants violated the Illinois CFA by concealing and failing to disclose the Defect. Defendants had an ongoing duty to

CLASS ACTION COMPLAINT - 48

Plaintiffs Hodges and Brown and the Illinois Class to refrain from unfair and deceptive practices under the CFA in the course of its business.

200.    Plaintiffs Hodges and Brown and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and failure to disclose material information regarding the Defect.

201.    Defendants knew of the safety hazards the Defect made Covered Vehicles susceptible to based on consumer complaints, and the fact that the technology is standard in their vehicles in other countries.

202.    As alleged above, Defendants owed Plaintiffs Hodges and Brown, and the Illinois Class a duty to disclose the material fact that the Covered Vehicles were not equipped with the immobilizer technology because Defendants: (a) possessed exclusive knowledge about the Defect and the ease with which they can be stolen; (b) intentionally concealed the foregoing from Plaintiffs Hodges, Brown, and the Illinois Class; and (c) made incomplete representations about the Covered Vehicles' reliability and safety, while purposefully withholding material facts from Plaintiffs Hodges and Brown, and the Illinois Class that contradicted these representations.

203.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs Hodges and Brown seek monetary relief against Defendants in the amount of actual damages as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent in its fraud and deceptive practices.

CLASS ACTION COMPLAINT - 49

204.     Plaintiffs Hodges and Brown also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*

**CLAIM VIV**
**BREACH OF EXPRESS WARRANTY**
**(810 ILL. COMP. STAT. §§ 5/2-313 AND 5/2A-210)**

205.     Plaintiffs Hodges and Brown, individually and on behalf of the Illinois Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

206.     Plaintiffs Hodges and Brown bring this claim individually and on behalf of the Illinois Class against Defendants Kia and Hyundai.

207.     Defendants Kia and Hyundai are and were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

208.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

209.     The Covered Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 8/2-105(1) and 5/2A-103(1)(h).

210.     Defendants provided express warranty to Plaintiff Hodges, Brown, and the Illinois Class Members of the Covered Vehicles' safety and reliability as a mode of transportation.

CLASS ACTION COMPLAINT - 50

211.    Defendants' warranties regarding the Covered Vehicles formed a basis of the bargain that was breached when Plaintiffs Hodges and Brown, and the Illinois Class members purchased or leased the Covered Vehicles with the Defect that prevents the Covered Vehicles from being easily stolen.

212.    Defendants breached the express warranty promising to provide a safe and securable vehicle. Defendants have not repaired or adjusted, and has been unable to repair or adjust, the Covered Vehicles' Defects.

213.    Defendants were provided with notice of these issues by numerous complaints against them, including the instant Complaint, and by consumer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

214.    As a direct and proximate result or Defendants' breach of express warranties, Plaintiff Hodges and Brown, and the Illinois Class members have been damaged in an amount to be determined at trial.

**CLAIM X**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(810 ILCS §§ 5/2-314 AND 5/2A-202)**

215.    Plaintiffs Hodges and Brown, individually and on behalf of the Illinois Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

CLASS ACTION COMPLAINT - 51

216.    Plaintiffs Hodges and Brown bring this claim individually and on behalf of the Illinois Class against Defendants Hyundai and Kia.

217.    Defendants Kia and Hyundai are and were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

218.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

219.    The Covered Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 8/2-105(1) and 5/2-103(1)(h).

220.    A warranty that the Covered Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

221.    The Covered Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Covered Vehicles are inherently defective in that their ignition system is not equipped with the immobilizer technology that prevents theft.

222.    Defendants knew about the Defect at the time of purchase, allowing them to cure their breach of warranty if they chose.

CLASS ACTION COMPLAINT - 52

223.    Defendants were provided notice of these issues by numerous complaints against them, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

224.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability Plaintiffs Hodges and Brown, and the Illinois Class members have been damaged in an amount to be proven at trial.

**D. Claims Brought on Behalf of the Indiana Class**

**CLAIM XI**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT ("IDCSA")**
**(IND. CODE § 24-5-0.5-1, *ET SEQ.*)**

225.    Plaintiff Kekar, individually and on behalf of the Indiana Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

226.    Plaintiff Kekar brings this claim individually and on behalf of the Illinois Class against Defendant Hyundai.

227.    Defendant Kia is and was at all relevant times a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

228.    Defendant Kia is and was at all relevant times a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3)(A) and regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

229.    Defendant Kia received notice from Plaintiffs pursuant to Ind. Code § 24-5-0.5-5 concerning its wrongful conduct as alleged herein. Moreover, Defendant Kia was provided notice by the numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities. Therefore, sending pre-suit notice pursuant to Ind. Code § 24-5-0.5-5 is an exercise in futility for Indiana Plaintiffs because Defendants have not cured their unfair, abusive, and deceptive acts and practices, or their violations of IDCSA were incurable.

230.    Defendant Hyundai engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3.

231.    Prohibited deceptive acts in violation of Indiana Code § 24-5-0.5-3, include, but are not limited to: (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (b) misrepresenting that the subject of a consumer

transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

232. Defendant Hyundai engaged in deceptive practices that violated the IDCSA by knowingly making misleading statements about the safety, characteristics, and uses of the Covered Vehicles and knowingly failed to disclose the risks posed by the lack of immobilizer technology, which put the safety of vehicle owners and lessees at risk for break-ins and theft of the Covered Vehicles.

233. Defendant Hyundai's acts and practices were "unfair" because they caused or were likely to cause substantial damages to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. For example, Defendant Hyundai makes almost identical cars to the Covered Vehicles in other countries that require the immobilizer technology as standard, making it obvious that doing so does not outweigh any countervailing benefits.

234. The damages to consumers from Defendant Hyundai's conduct was and is substantial because it was non-trivial and non-speculative and involved a monetary injury. The injury to consumers was substantial because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer, some of which are at a total loss of their Covered Vehicle.

CLASS ACTION COMPLAINT - 55

235. Plaintiff Kekar and the Indiana Class could not have reasonably avoided injuries because Defendant Hyundai's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from Plaintiff Kekar and the Indiana Class about the safety of the Covered Vehicles' anti-theft system, Defendant Hyundai created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigation injury.

236. Defendant Hyundai's business practices, in concealing material information or mispresenting the qualities, characteristics, and performance of its Covered Vehicles had no countervailing benefit to consumers or to competition.

237. Defendant Hyundai's acts and practices were also "abusive" for numerous reasons, including: (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendants;

and (d) because Defendant Hyundai took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

238. Defendant Hyundai intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Covered Vehicles and their lack of immobilizer technology with intent to mislead Plaintiff Kekar and the Indiana Class.

239. Defendant Hyundai's omissions and/or misrepresentations about the Defect were material to Plaintiff Kekar and the Indiana Class because they were likely to deceive reasonable consumers. Plaintiff Kekar and the Indiana Class members relied on Defendant Hyundai's material misrepresentations and omissions regarding the Defect.

240. Defendant Hyundai owed Plaintiff Kekar and the Indiana Class a duty to disclose material facts about the safety risks posed by the Defect in its Covered Vehicles, because Defendant Hyundai:

a) Possessed exclusive knowledge about the lack of immobilizer technology;

b) Intentionally concealed the foregoing from Plaintiff Kekar and the Indiana Class; and/or

c) Made incomplete and misleading representations that its Covered Vehicles were equipped with anti-theft technology, while purposefully withholding

material facts from Plaintiff Kekar and the Indiana Class that contradicted these representations.

241.    Defendant Hyundai had a duty to disclose the truth about the risks posed by the lack of the immobilizer technology because it put the Covered Vehicles at risk of theft by anyone with access to a USB shaped object.

242.    Plaintiff Kekar and the Indiana Class members has unequal bargaining power with respect to their purchase and/or use of Defendant Hyundai's Covered Vehicles because of Defendant Hyundai's omissions and misrepresentations.

243.    Plaintiff Kekar and the Indiana Class members could not have discovered through the exercise of reasonable diligence that Defendant Hyundai's Covered Vehicles were not equipped with the immobilizer technology and were therefore highly susceptible to theft. Plaintiff Kekar and the Indiana Class acted reasonably in relying on Defendant Hyundai's misrepresentations and omissions, the truth of which they could not have discovered.

244.    Had Defendant Hyundai disclosed to Plaintiff Kekar and the Indiana Class material facts, including but not limited to, the safety risks associated with vehicles not equipped with the immobilizer technology, Plaintiff Kekar and the Indiana class members would not have purchased the Covered Vehicles and/or would have paid substantially less. Instead, Defendant Hyundai kept the effects of the lack of immobilizer technology secret, and embarked on a disinformation

campaign aimed at convincing hundreds of thousands of consumers that the Covered Vehicles are a reliable mode of transportation that can be safely prevented from theft.

245. Defendant Hyundai's deceptive, unfair, and abusive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Kekar and the Indiana Class members, about the true risks posed by the Defect in the Covered Vehicles.

246. Defendant Hyundai had an ongoing duty to all consumers of Covered Vehicles to refrain from deceptive, unfair, and abusive acts and practices under the IDCSA.

247. Defendant Hyundai acted intentionally, knowingly, and maliciously to violate IDCSA, and recklessly disregarded Plaintiff Kekar's and the Indiana Class's rights. Defendant Hyundai's knowledge about the true risks posed by the Defect put it on notice that the Covered Vehicles were not as it advertised.

248. Defendant Hyundai's conduct includes incurable deceptive acts that Defendant Hyundai engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

249. As a direct and proximate result of Defendant Hyundai's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff Kekar and the Indiana Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages,

1   including from not receiving the benefit of their bargain in purchasing or leasing the

2   Covered Vehicles.

3       250.    Defendant Hyundai's violations present a continuing risk to Indiana

4   Class members, and the general public. Defendant Hyundai's unlawful acts and

5   practices complained of herein affect the public interest.

6       251.    Plaintiff Kekar and the Indiana Class seek all monetary and non-

7   monetary relief allowed by law, including the greater of actual damages or $500 for

8   each willful violation; the greater of treble damages or $1,000 for each willful

9   violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and

10  punitive damages.

## CLAIM XII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (IND. CODE § 26-1-2-314)

13      252.    Plaintiff Kekar, individually and on behalf of the Indiana Class,

14  incorporates by reference all preceding allegations as though fully set forth herein.

15      253.    Plaintiff Kekar brings this claim individually and on behalf of the Indiana

16  Class against Defendant Hyundai.

17      254.    Defendant Hyundai is and was at all relevant times a "merchant" as

18  defined by Ind. Code § 26-1-2-104.

19      255.    A warranty that the Covered Vehicles were in merchantable condition is

20  implied in a contract for their sale pursuant to Ind. Code § 26-1-2-314.

CLASS ACTION COMPLAINT - 60

256.     Plaintiff Kekar and the Indiana Class purchased or leased the Covered Vehicles manufactured and marketed by Defendant Hyundai by and through Defendant Hyundai's authorized sellers for retail sale to consumers, or were otherwise expected to be third-party beneficiaries of Defendant Hyundai's contracts with authorized sellers, or eventual purchasers when bought from a third-party. At all relevant times, Defendant Hyundai was the manufacturer, marketer, warrantor, and/or seller of the Covered Vehicles. Defendant Hyundai knew or had reason to know of the specific use for which the Covered Vehicles were purchased.

257.     The Covered Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code § 26-1-2-105.

258.     Defendant Hyundai impliedly warranted that the Covered Vehicles were in merchantable condition and fit. The Covered Vehicles when sold at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation that could be safely locked when not in use by the owner. The Covered Vehicles, however, are not fit for the purpose of reliable transportation because owners have no way to prevent theft of their vehicles. Thus, Defendant Hyundai breached its implied warranty of merchantability for the ordinary purpose for which the Covered Vehicles are purchased and used.

259.     Defendant Hyundai cannot disclaim its implied warranty as it knowingly sold unsafe and unfit Covered Vehicles lacking the immobilizer system.

260.     Defendant Hyundai was provided notice by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities. Affording Defendant Hyundai a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant Hyundai has known of and concealed the risks associated with the Defect.

261.     As a direct and proximate result of Defenant Hyundai's breach of the implied warranty and merchantability, Plaintiff Kekar and the Indiana Class have been damaged in an amount to be proven at trial.

262.     Plaintiff Kekar and the Indiana Class have been excused from performance of any warranty obligations as a result of Defendant Hyundai's conduct described herein.

**E. Claims Brought on Behalf of the Louisiana Class**

**CLAIM XIII**
**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**
**(LA. REV. STAT. § 51.1401 *ET SEQ.*)**

CLASS ACTION COMPLAINT - 62

263. Plaintiff Erica Tullison, individually and on behalf of the Louisiana Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

264. Plaintiff Tullison brings this claim individually and on behalf of the Louisiana Class against Defendant Hyundai.

265. Plaintiff Tullison and the Louisiana Class purchased a Class Vehicle manufactured by Defendant Hyundai that was marketed for safe and reliable transportation.

266. Plaintiff Tullison and the Louisiana Class are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

267. Plaintiff Tullison and the Louisiana Class are "consumers" within the meaning of LA. REV. STAT. § 51:1401(1).

268. Defendant Hyundai engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

269. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).

270. Defendant Hyundai participated in misleading, false, or deceptive acts that violated the Louisiana CPL. By systematically concealing the Defects in the Covered Vehicles, Defendant Hyundai engaged in deceptive business practices

prohibited by the Louisiana CPL. The suppressed or omitted information would be material to a reasonable consumer.

271. In the course of its business, Defendant Hyundai concealed the Defect in the Covered Vehicles and otherwise engaged in activities with a tendency or capacity to deceive.

272. Defendant Hyundai also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact within intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of the Covered Vehicles.

273. Defendant Hyundai knew about the Covered Vehicles' Defect. Defendant Hyundai received information of the Defect through other complaints, this instant Complaint, consumer letters, emails, and other communications from Class members and from dealers and other repair facilities about the true dangers posed by the Defect.

274. Defendant Hyundai intentionally and knowingly misrepresented material facts regarding the Covered Vehicles with the intent to mislead Plaintiff Tullison and the Louisiana Class.

275. Defendant Hyundai knew or should have known that its conduct violated the Louisiana CPL.

CLASS ACTION COMPLAINT - 64

276.     As alleged above, Defendant Hyundai made material statements about the reliability of the Covered Vehicles that were either false or misleading. Defendant Hyundai owed Plaintiff Tullison and the Louisiana Class a duty to disclose the true reliability and safety of the Covered Vehicles because Defendant Hyundai: (a) possessed exclusive knowledge about the defects in the Covered Vehicles; (b) intentionally concealed the foregoing from Plaintiff Sampson and the Louisiana Class; and (c) made incomplete representations about the reliability of the Covered Vehicles, while purposefully withholding material facts from Plaintiff Sampson and the Louisiana Class that contradicted these representations.

277.     Because Defendant Hyundai fraudulently concealed the Defect in the Covered Vehicles, purchasers of the Covered Vehicles were deprived the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they had been free from the Defect. Furthermore, Plaintiff Tullison and the Louisiana Class have often been deprived the full benefit of their bargain because the Covered Vehicles have been stolen and not recovered, or recovered at the value of a total loss.

278.     Had Plaintiff Tullison and the Louisiana Class been aware of the Defect in their Covered Vehicles, they would have either not bought the Covered Vehicles or would have paid less for them.

CLASS ACTION COMPLAINT - 65

279.     As a direct and proximate result of Defendant Hyundai's violations of the Louisiana CPL, Plaintiff Tullison and the Louisiana Class have suffered injury-in-fact and/or actual damage.

280.     Pursuant to LA. REV. STAT. § 51:1409, Plaintiff Tullison and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendant Hyundai's knowing violations of the Louisiana CPL; an order enjoining Defendant Hyundai's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## CLAIM XIV
## VIOLATION OF WARRANTY AGAINST REDHIBITORY DEFECTS
## (LA. CIV. CODE § 2520, *ET SEQ.*)

281.     Plaintiff Tullison, individually and on behalf of the Louisiana Class, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

282.     Plaintiff Tullison individually and on behalf of the Louisiana Class brings this claim against Defendant Hyundai.

283.     Plaintiff Tullison and the Louisiana Class are and were at all relevant times "buyers" under La. Civ. Code articles 2520, *et seq.*

284.     Defendant Hyundai is and was at all relevant times a "seller" under La. Civ. Code articles 2520, *et seq.*

285.     Defendant Hyundai engaged in trade or commerce at all relevant times under La. Civ Code articles 2520, *et seq.* by designing, manufacturing, distributing, advertising, marketing, labeling, offering for sale, selling, and distributing the Covered Vehicles.

286.     Plaintiff Tullison and the Louisiana Class purchased or leased Defendant Hyundai's Covered Vehicles through Defendant Hyundai's authorized dealers.

287.     Defendant Hyundai, as the designer, manufacturer, marketer, distributor, and/or seller, warranted that the Covered Vehicles were fit for their intended purpose of reliable and safe transportation.

288.     Defendant Hyundai, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, advertising, and labeling of the Covered Vehicles that the Vehicles were safe, that they were reliable, and that the key locking system was functional, when in fact, these warranties were meaningless as to the intended safety purposes of the Covered Vehicles.

289.     Defendant Hyundai made the foregoing representations and warranties to all buyers, which became the basis of the bargain between Plaintiff Tullison, the Louisiana Class, and Defendant Hyundai.

290.     In fact, Defendant Hyundai's Covered Vehicles contain redhibitory defects, as they are not safe to be left unattended and can be stolen with a simple

CLASS ACTION COMPLAINT - 67

USB cable, and because each of the above-described warranties is a false and misleading misrepresentation as to the fitness of the Covered Vehicles for particular uses.

291. Defendant Hyundai breached these warranties and/or contract obligations by placing the Covered Vehicles into the stream of commerce and selling them to customers, when the Covered Vehicles are unsafe and pose a significant safety risk to the general public at the time they enter the stream of commerce. The lack of safety inherent in the Covered Vehicles renders them unfit for their intended use and purpose and substantially and/or completely impairs the use and value of the Covered Vehicles.

292. Defendant Hyundai breached its warranties by selling the Covered Vehicles, which contain redhibitory defects, are unsafe for use, and cannot be used for their ordinary, intended purpose of being a safe and reliable mode of transportation. Defendant Hyundai breached its warranties to Plaintiff Tullison and the Louisiana Class in that the Covered Vehicles are not safe for their intended purpose at the time that they left Defendant Hyundai's possession or control and were sold to Plaintiff Tullison and the Louisiana Class, creating a serious safety risk to Plaintiff Tullison, the Louisiana Class, and the general public.

293. Defendant Hyundai further breached its warranty to adequately repair or replace the Covered Vehicles despite its knowledge of the Defect, and/or despite

CLASS ACTION COMPLAINT - 68

its knowledge of alternative designs, in which the vehicles are equipped with the immobilizer, such as on their higher-end models with push-start technology.

294. Defendant Hyundai was provided actual and/or constructive notice of the redhibitory defects and breaches of the above-described warranties by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

295. Plaintiff Tullison and the Louisiana Class are entitled to reimbursement for the full cost of their Covered Vehicles due to the above-described redhibitory defects and Defendant Hyundai's breach of its warranties. Plaintiff Tullison and the Louisiana Class are also entitled to recover their attorneys' fees pursuant to the law of redhibition.

296. The aforementioned redhibitory defect renders Defendant Hyundai's Covered Vehicles useless, or alternatively, diminishes the usefulness or value of the Covered Vehicles to the point that Plaintiff Tullison and the Louisiana Class would have either not purchased the class vehicle or would have paid significantly less for it.

297. Plaintiff Tullison and the Louisiana Class were damaged by Defendant Hyundai's uniform misconduct, as they did not receive the benefit of the bargain, lost the Covered Vehicles' intended benefits, and suffered damages at the point-of-

CLASS ACTION COMPLAINT - 69

sale, as they would not have purchased the Covered Vehicles or would have paid

significantly less if they had known the truth about the Defect and lack of anti-theft

technology.

**F. Claims Brought on Behalf of the Maryland Class**

**CLAIM XV**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**(M.D. CODE, COM. LAW § 13-101, *ET SEQ*.)**

298.     Plaintiff Hatchett, individually and on behalf of the Maryland Class,

incorporates by reference all allegations contained in the preceding paragraphs of

this Complaint as if fully set forth herein.

299.     Plaintiff Hatchett brings this claim individually and on behalf of the

Maryland Class against Defendant Hyundai.

300.     Defendant Hyundai and Plaintiffs are "persons" within the meaning of

Md. Code, Com. Law § 13-101(h).

301.     The Maryland Consumer Protection Act ("Maryland CPA") provides

that a person may not engage in any unfair or deceptive trade practice in the sale or

lease of any consumer good. Md. Code, Com. Law § 13-303. Defendant Hyundai

participated in misleading, false, or deceptive acts that violated the Maryland CPA.

By systematically concealing the Defect in the Vehicles, Defendant Hyundai

engaged in deceptive business practices prohibited by the Maryland CPA. The

Defect would be material to a reasonable consumer.

CLASS ACTION COMPLAINT - 70

302.     Defendant Hyundai's actions, as set forth above, occurred in the conduct of trade or commerce.

303.     In the course of its business, Defendant Hyundai concealed the Defect in Plaintiffs' Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant Hyundai also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Covered Vehicles.

304.     Defendant Hyundai knew that the Vehicles were defectively manufactured and were not suitable for their intended use. Defendant Hyundai was previously provided notice of the security Defect in the Covered Vehicles by numerous customer complaints, including the present Complaint, letters, emails, and other communications from Class members and from dealers and other repair facilities. Defendant Hyundai nevertheless failed to warn Plaintiff Hatchett and the Maryland Class about the Defect despite having a duty to do so.

305.     By failing to disclose and by actively concealing the Defect in Plaintiff Hatchett's and the Maryland Class's Vehicles, which it marketed as safe, reliable, and of high quality, Defendant Hyundai engaged in unfair and deceptive business practices in violation of the Maryland CPA.

306. In the course of Defendant Hyundai's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Defect in Plaintiff Hatchett and the Maryland Class's Vehicles.

307. Defendant Hyundai's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Hatchett and the Maryland Class members, about the true safety and reliability of their Vehicles.

308. Defendant Hyundai intentionally and knowingly omitted material facts regarding the Class Vehicles with the intent to mislead Plaintiff Hatchett and the Maryland Class.

309. Defendant Hyundai knew or should have known that its conduct violated the Maryland CPA.

310. As alleged above, Defendant Hyundai made material statements about the safety and reliability of the Covered Vehicles and Defendant Hyundai's brand that were either false or misleading.

311. Defendant Hyundai owed Plaintiff Hatchett and the Maryland Class members a duty to disclose the true safety and reliability of the Covered Vehicles because Defendant Hyundai:

    a. Possessed exclusive knowledge about the Defect in the Covered Vehicles;

    b. Intentionally concealed the foregoing from Plaintiff Hatchett; and/or

CLASS ACTION COMPLAINT - 72

c. Made incomplete representations about the safety and reliability of the Covered Vehicles.

312. Because Defendant Hyundai fraudulently concealed the Defect in the Vehicles, Plaintiff Hatchett and the Maryland Class members were deprived of the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they were free from the Defect. Had Plaintiff Hatchett and the Maryland Class members been aware of the Defect in their Vehicles, they would have either not have bought their Vehicles or would have paid less for them.

313. Plaintiff Hatchett and the Maryland Class members were also harmed by Defendant Hyundai's unfair and deceptive trade practices since their Vehicles were worth less as the result of Defendant Hyundai's concealment of, and failure to remedy, the Defect. This diminished value is directly attributed to Defendant Hyundai's dishonesty and omissions with respect to the quality and safety of the Covered Vehicles.

314. Defendant Hyundai's concealment of the Defect in Plaintiff Hatchett and the Maryland Class members' Vehicles was material to Plaintiffs.

315. Plaintiff Hatchett and the Maryland Class members suffered ascertainable loss caused by Defendant Hyundai's omissions and its concealment of and failure to disclose the Defect in the Vehicles.

316. As a direct and proximate result of Defendant Hyundai's violations of the Maryland CPA, Plaintiffs have suffered injury-in-fact and/or actual damages as alleged above.

317. Pursuant to Md. Code, Com. Law § 13-408, Plaintiff Hatchett and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## CLAIM XVI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MD. CODE, COM. LAW § 2-314)

318. Plaintiff Hatchett, individually and on behalf of the Maryland Class, incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

319. Plaintiff Hatchett brings this claim individually and on behalf of the New York Class against Defendant Hyundai.

320. Defendant Hyundai is and was at all relevant times a "merchant" with respect to motor vehicles within the meaning of MD. Code, Com. Law § 2-104(1).

321. Under Md. Code, Com. Law § 2-314, a warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff Hatchett and the Maryland Class purchased or leased their Vehicles from Defendant Hyundai.

CLASS ACTION COMPLAINT - 74

322.     The Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that a security Defect renders them unsafe and unreliable.

323.     Defendant Hyundai was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities.

324.     As a direct and proximate result of Defendant Hyundai's breach of the warranties of merchantability, Plaintiff Hatchett and the Maryland Class have been damaged in an amount to be proven at trial.

**G. Claims Brought on Behalf of the New York Class**

**CLAIM XVII**
**VIOLATION OF THE NEW YORK DECEPTIVE ACTS AND PRACTICES ACT**
**(N.Y. GEN. BUS. LAW §§ 349, *ET SEQ.*)**

325.     Plaintiff Payne, individually and on behalf of the New York Class, incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

326.     Plaintiff Payne brings this claim individually and on behalf of the New York Class against Defendant Kia.

CLASS ACTION COMPLAINT - 75

327. Plaintiff Payne and the New York Class have standing to pursue this claim because they suffered injury in fact and lost money or property as a result of Defendant Kia's actions as described herein. All members of the New York Class have incurred actual damages and ascertainable loss in the form of diminished value of their Covered Vehicles because had they known the truth about the lack of immobilizer technology, they would not have purchased them or would have paid substantially less for them.

328. Plaintiff Payne and the New York Class members are "persons" as defined in the New York Deceptive Acts and Practices Act (the "New York DAPA"). N.Y. Gen. Bus. Law § 349(h).

329. Defendant Kia's actions as set forth herein occurred in the conduct of its business, trade, or commerce within the meaning of N.Y. Gen. Bus, Law § 349(a).

330. The New York DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). Defendant Kia's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

331. In the course of its business, Defendant Kia concealed, suppressed, and misrepresented material facts concerning the Defect, in violation of N.Y. Gen. Bus. Law § 349(a). It did so by, among, other things, representing that the Covered Vehicles were reliable to be locked, representing that the Covered Vehicles were

safe from theft—but concealing that the Covered Vehicles were unsafe to be left unattended even when locked because of the Defect. Defendant Kia's representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Plaintiff Payne and the New York Class.

332. Defendant Kia knew these representations were false and misleading at the time of sale. Defendant Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Covered Vehicles.

333. Defendant Kia's actions as alleged were further "deceptive" because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Defendant Kia's customers. The harm caused by Defendant Kia's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff Payne and the New York Class. Defendant Kia could and should have chosen one of many reasonably available alternatives, including not selling the Covered Vehicles, disclosing to prospective buyers that the Vehicles could not be protected from theft, and/or not representing that the Covered Vehicles were suitable for consumer use.

334. As a result of Defendant Kia's conduct in violation of N.Y. Gen. Bus. Law § 349(a), Plaintiff Payne and the New York Class received an inferior product to the product which they were promised. Had Defendant Kia disclosed the aforementioned material facts concerning the Defect, Plaintiff Payne and the New York Class would not have purchased the Covered Vehicles, or would have paid substantially less for them.

335. Defendant Kia owed Plaintiff Payne and the New York Class a duty to disclose the true nature of the Defect because Defendant Kia: (a) possessed exclusive knowledge about the Defect; (b) intentionally concealed the foregoing from Plaintiff Payne and the New York Class; and (c) made incomplete representations about the Defect, while purposefully withholding material facts from Plaintiff Payne and the New York Class that contradicted these representations. At the time of the sale, Defendant Kia knew about the Defect. Defendant Kia acquired additional information concerning the Defect and the effects it caused after the Covered Vehicles were sold but continued to conceal such information.

336. Defendant Kia thus violated the New York DAPA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Covered Vehicles.

337. Defendant Kia acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Defect with the intent to mislead Plaintiff Payne and the New York Class. Defendant Kia's knowledge of the Defect put it on notice that the Covered Vehicles were not as advertised. Accordingly, Defendant Kia knew or should have known that its conduct violated the New York DAPA.

338. As a direct and proximate result of Defendant Kia's violations of the New York DAPA, Plaintiff Payne and the New York Class have suffered injury-in-fact, actual damage, or both.

339. Defendant Kia's wrongful conduct constitutes a continuing course of unfair practices because Defendant Kia continues to represent that the Covered Vehicles are suitable for reliable and safe transportation. Defendant Kia's violations present a continuing risk to Plaintiff Payne and the New York Class, as well as the general public. Defendant Kia's unlawful acts and practices complained of herein affect the public interest. Plaintiff Payne and the New York Class therefore seek injunctive and equitable relief to remedy Defendant Kia's deceptive marketing, advertising, and labeling.

340. Plaintiff Payne and the New York Class further seek monetary damages against Defendant Kia, measured as actual damages in an amount to be determined at trial or $50 each, whichever is greater, as well as treble damages up to $1,000 each

because Defendant Kia willfully and knowingly violated the New York DAPA. Plaintiff Payne and the New York Class seek reasonable attorneys' fees and any other just and proper relief available under the New York DAPA.

**CLAIM XVIII**
**VIOLATION OF THE NEW YORK FALSE ADVERTISING LAW**
**(N.Y. GEN. BUS. LAW §§ 350, *ET SEQ.*)**

341. Plaintiff Payne, individually and on behalf of the New York Class, incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

342. Plaintiff Payne brings this claim individually and on behalf of the New York Class against Defendant Kia.

343. Plaintiff Payne and the New York Class have standing to pursue this claim because they suffered injury in fact and lost money or property as a result of Defendant Kia's actions as described herein. Plaintiff Payne and the New York Class have incurred actual damages and ascertainable loss in the form of the total loss of their Vehicles, the cost of repairing their damages Vehicles, and the diminished value of their Vehicles because had they known the truth about the Defect, they would not have purchased the Covered Vehicles or would have paid substantially less for them.

344. Defendant Kia's actions as set forth herein occurred in the conduct its business, trade, or commerce within the meaning of the New York False Advertising Law ("New York FAL"). N.Y. Gen. Bus. Law § 350.

345. The New York FAL makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a(1).

346. In the course of its business, Defendant Kia concealed, suppressed, and misrepresented material facts concerning the Defect, in violation of N.Y. Gen. Bus. Law § 350. It did so by, among other things, representing that the Covered Vehicles were suitable for reliable modes of transportation that could be locked and prevented from theft. Defendant Kia made and disseminated these representations and omissions throughout New York, through advertising, marketing, and other publications and statements. These representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Plaintiff Payne and the New York Class.

347. Defendant Kia knew these statements were false and misleading at the time of sale. Defendant Kia also engaged in unlawful trade practices by employing

deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Covered Vehicles.

348. As a result of Defendant Kia's conduct in violation of N.Y. Gen. Bus. Law § 350, Plaintiff Payne and the New York Class received an inferior product to the product which they were promised. Had Defendant Kia disclosed the aforementioned material facts concerning the Defect, Plaintiff Payne and the New York Class would not have purchased these products or would have paid substantially less.

349. Defendant Kia thus violated the New York FAL by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Covered Vehicles.

350. Defendant Kia acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Covered Vehicles with the intent to mislead Plaintiff Payne and the New York Class. Defendant Kia's knowledge of the Defect put it on notice that the Covered Vehicles were not as advertised. Accordingly,

CLASS ACTION COMPLAINT - 82

Defendant Kia knew or should have known that its conduct violated the New York FAL.

351.    Unless restrained by this Court, Defendant Kia will continue to engage in untrue and misleading advertising in violation of N.Y. Gen. Bus. Law § 350.

352.    As a direct and proximate result of Defendant Kia's violations of the New York FAL, Plaintiff Payne and the New York Class have suffered injury-in-fact, actual damage, or both.

353.    Defendant Kia's wrongful conduct constitutes a continuing course of unfair practices because Defendant Kia continues to represent that the Covered Vehicles are suitable as a reliable and safe mode of transportation that can be protected from theft. Defendant Kia's violations present a continuing risk to Plaintiff Payne and the New York class, as well as the general public. Defendant Kia's unlawful acts and practices complained of herein affect the public interest. Plaintiff Payne and the New York Class seek injunctive and equitable relief to remedy Defendant Kia's deceptive marketing, advertising, and packaging.

354.    Plaintiff Payne and the New York Class further seek monetary damages against Defendant Kia, measured as actual damages in an amount to be determined at trial or statutory damages of $500 each, whichever is greater. Because Defendant willfully and knowingly violated the New York FAL, Plaintiff Payne and the New York Class are entitled to recover three times actual damages. Plaintiff Payne and

CLASS ACTION COMPLAINT - 83

the New York Class also seek reasonable attorneys' fees and any other just and proper relief available under the New York FAL.

## CLAIM XIX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. UCC § 20314, *ET SEQ.*)

355.    Plaintiff Payne, individually and on behalf of the New York Class, incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

356.    Plaintiff Payne brings this claim individually and on behalf of the New York Class against Defendant Kia.

357.    New York law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. UCC § 2-314(1).

358.    Defendant Kia is and was at all relevant times a "merchant" as defined by N.Y. UCC § 2-104(1).

359.    Plaintiff Payne and the New York Class purchased or leased the Covered Vehicles manufactured and marketed by and through Defendant Kia's authorized dealers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant Kia's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Defendant Kia was the merchant, manufacturer, marketer, warrantor, and/or seller of the Covered

CLASS ACTION COMPLAINT - 84

Vehicles. Defendant Kia knew or had reason to know of the specific use for which the Covered Vehicles were purchased.

360.    The Covered Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code.

361.    Defendant Kia impliedly warranted that the Covered Vehicles were in merchantable condition and fit. The Covered Vehicles when sold at all times thereafter were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation for consumers that can be protected from theft. The Covered Vehicles, however, are not safe and reliable as a mode of transportation that can be locked and protected from theft and present an undisclosed safety risks to owners. Thus, Defendant Kia breached its implied warranty of merchantability for the ordinary purpose for which the Covered Vehicles are purchased and used.

362.    Defendant Kia cannot disclaim its implied warranty as it knowingly sold unsafe and unreliable Covered Vehicles.

363.    Defendant Kia was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails, and other communications from Class members and from dealers and other repair facilities. Affording Defendant Kia a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because

CLASS ACTION COMPLAINT - 85

Defendant Kia has known of and concealed the safety risks attendant to the Covered Vehicles.

364.    As a direct and proximate result of Defendant Kia's breach of the implied warranty of merchantability, Plaintiff Payne and the New York Class have been damaged in an amount to be proven at trial.

365.    Plaintiff Payne and the New York Class have been excused from performance of any warranty obligations as a result of Defendant Kia's conduct described herein.

**H. Claims Brought on Behalf of the Ohio Class**

**CLAIM XX**
**VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT**
**(OHIO REV. CODE § 4165.01, *ET SEQ.*)**

366.    Plaintiffs Grant and Arthur-Weaver, individually and on behalf of the Ohio Class, incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

367.    Plaintiffs Grant and Arthur-Weaver bring this claim individually and on behalf of the Ohio Class against Defendants Kia and Hyundai.

368.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01, et seq. (the "OH DTPA"), states in relevant part that "A person who is injured by a person who commits a deceptive trade practice that is listed in division (A) section

CLASS ACTION COMPLAINT - 86

4165.02 of the revised Code may commence a civil action to recover actual damages from the person who commits the deceptive trade practice." *Id.* § 4165.03(A)(2). Division (A) section 4165.02 provides that a person "engaged in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: … (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; …." Division (B) section 4165.02 states: "In order to prevail in a civil action under section 4165.03 of the Revised Code that seeks injunctive relief or an award of damages and that is based on one or more deceptive trade practices listed in division (A) of this section, a complainant need not prove competition between the parties to the civil action."

369.    By representing in its advertising that the Covered Vehicles were safe and equipped to be driven and could be safely locked, Defendants knowingly and intentionally made material misrepresentations of and actionable concealments of material facts, in violation of the OH DTPA.

CLASS ACTION COMPLAINT - 87

370.     Plaintiffs Grant and Arthur-Weaver and the Ohio Class suffered ascertainable loss caused by Defendants' material misrepresentations and actionable concealment of material facts.

371.     Plaintiffs Grant and Arthur-Weaver, and the Ohio Class are entitled to damages or other appropriate legal or equitable relief, pursuant to the OH DTPA, as set forth above.

## CLAIM XXI
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (OHIO REV. CODE § 1302.27)

372.     Plaintiffs Grant and Arthur-Weaver individually and on behalf of the Ohio Class incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

373.     Plaintiffs Grant and Arthur-Weaver individually and on behalf of the Ohio Class bring this claim against Defendants.

374.     Ohio Rev. Code § 1302.27 provides in pertinent part:

(A) Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind….

(B) Goods to be merchantable must be at least such as:

   (1) Pass without objection in the trade under the contract description; and

CLASS ACTION COMPLAINT - 88

1   (2) In the case of fungible goods are of fair average quality within the

2        description; and

3   (3) Are fit fort the ordinary purposes for which such goods are used; and

4   (4) Run, within the variations permitted by the agreement, of even kind,

5        quality and quantity, within each unit and among all units involved; and

6   (5) Are adequately contained, packaged, and labeled as the agreement may

7        require; and

8   (6) Conform to the promises or affirmations of fact made on the container or

9        label if any.

10   375.   The sale of the Covered Vehicles as reliable and safe modes of

11 transportation, when they can be broken into and stolen by any device the shape and

12 size of a USB drive, creates a breach of Defendants' implied warranty of fitness for

13 the Covered Vehicles.

14   376.   Plaintiffs Grant and Arthur-Weaver, and the Ohio Class are entitled to

15 damages and/or other relief.

16               **PRAYER FOR RELIEF**

17   WHEREFORE, Plaintiffs, on their own and on behalf of the Class members,

18 respectfully request judgment against Defendants as follows:

19   (A)       Certifying the proposed Nationwide Class and State Law Classes;

20   (B)       Appointing Plaintiffs and their counsel to represent the Classes;

CLASS ACTION COMPLAINT - 89

(C)       Ordering injunctive relief, restitution, disgorgement, and other appropriate relief;

(D)       Awarding compensatory, punitive, exemplary, and other recoverable damages where permitted by law;

(E)       Awarding reasonable attorneys' fees and expenses;

(F)       Awarding pre-judgment and post-judgment interest;

(G)       Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: January 23, 2023       Respectfully submitted,

Schubert Jonckheer & Kolbe LLP

By */s/ Amber L. Schubert*

ROBERT C. SCHUBERT (No. 62684)
(rschubert@sjk.law)
DUSTIN L. SCHUBERT (No. 254876)
(dschubert@sjk.law)
AMBER L. SCHUBERT (No. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St Ste 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Facsimile:      (415) 788-0161

CLASS ACTION COMPLAINT - 90